DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Mathew Bailey, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In March 2005, Cuyahoga Falls police officers received a call from a Discount Drug Mart pharmacist regarding a suspicious prescription. Officers arrived at the store when the prescription was being filled and began questioning Appellant. Appellant indicated that he was picking up the prescription for a friend. Officers contacted the doctor whose name appeared on the script and learned that he had not written the prescription in question.
 {¶ 3} As a result of the officers' investigation, on April 22, 2005, Appellant was indicted on one count of using deception to obtain a dangerous drug in violation of R.C. 2925.22. The matter proceeded to a jury trial on June 9, 2005. At the completion of the trial, Appellant was found guilty and sentenced to time already served and placed on community control for two years. Appellant timely appealed, raising two assignments of error for review. For ease of analysis, we have combined Appellant's assignments of error.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] CRIMINAL RULE 29(A) MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO PROVE THE DANGEROUS DRUG ELEMENT BEYOND A REASONABLE DOUBT."
 ASSIGNMENT OF ERROR II
"PURSUANT TO ARTICLE IV § 3(B)(3) OF THE OHIO CONSTITU[T]ION, THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT [APPELLANT'S] CONVICTION."
 {¶ 4} In his assignments of error, Appellant asserts that the State produced insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's assertion that his conviction was against the manifest weight of the evidence first as it is dispositive of Appellant's claim of insufficiency.
 {¶ 6} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 7} Appellant was convicted of using deception to obtain a dangerous drug in violation of R.C. 2925.22 which provides as follows:
"(A) No person, by deception, as defined in section 2913.01 of the Revised Code, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug or shall possess an uncompleted preprinted prescription blank used for writing a prescription for a dangerous drug."
R.C. 2913.01(A) defines "deception" as follows:
"`Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
Additionally, R.C. 2901.22(B) defines knowingly as follows:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 8} In support of his argument, Appellant asserts that the State failed to prove that the drug he obtained was a dangerous drug. Specifically, Appellant urges that the State was required to use the testimony of an expert to establish the identity of the drug. In addition, Appellant argues the State failed to prove the mental element of the crime, i.e., that he acted knowingly. We find that both of Appellant's contentions lack merit.
 {¶ 9} Appellant first asserts that the State was required to provide an expert to identify the substance in the prescription bottle as a dangerous drug. We disagree.
 {¶ 10} The Ohio Supreme Court has recognized that the nature of a controlled substance can be proved by testimony from an experienced layperson. State v. Maupin (1975),42 Ohio St.2d 473, 479 (permitting an experienced police officer to identify marijuana). Appellant attempts to distinguish Maupin on the basis that Xanax cannot be as easily identified as marijuana. In addition, Appellant relies upon State v. Titsworth, 8th Dist. No. 84548, 2005-Ohio-1962, for the proposition that Maupin is limited to the identification of marijuana. We begin by noting that, unlike the heroin at issue in Titsworth, testimony indicated that the prescription medication herein was readily identifiable by appearance because of the distinct markings placed on the pills by their manufacturer. Therefore, this Court finds the analysis in Titsworth to be inapplicable to the case at hand.
 {¶ 11} In its case in chief, the State did not seek to prove the nature of the controlled substance through a police officer. Rather, their witness was the pharmacist who had actually filled the prescription. Andrew Hawk, Sr., testified that he had been a licensed pharmacist for nearly twenty-five years. Hawk further testified that prescription drugs are identifiable through two markings. One marking will identify the manufacturer. The second marking, a number, will identify the particular drug. At trial, Hawk identified the drug's manufacturer, Purepack, by its symbol on one side of the pills. Hawk then identified the drug, Alprazolam, by its identifying number, 029, on the reverse side of the pills. Hawk testified that Alprazolam is the generic form of Xanax.[1] In Maupin, the Court found that the testimony of an officer with fourteen years of experience in narcotics was sufficient to identify marijuana. Maupin,42 Ohio St.2d at 480. Accordingly, we find that the testimony of a pharmacist with twenty-five years of experience in dispensing prescription medication is sufficient to identify a distinctly marked controlled substance contained in a prescription bottle which had been filled by that same pharmacist.
 {¶ 12} Appellant next asserts that the State failed to prove that he acted knowingly. We disagree.
 {¶ 13} Because a defendant's mental state is difficult to demonstrate with direct proof, it may be "inferred from the surrounding circumstances." State v. Logan (1979),60 Ohio St.2d 126, 131. Appellant asserts that his story remained consistent throughout the proceedings below: he was picking the medication up for a friend. Based on the evidence presented, however, we cannot say that the jury lost its way in convicting Appellant.
 {¶ 14} The State began its case by calling Hawk as a witness. Hawk testified that he became suspicious of the prescription almost immediately. A female called in the prescription on a Saturday from a doctor's office in Independence. Hawk stated that the Drug Mart in Cuyahoga Falls rarely services doctors in Independence and that it was rare for doctors to have hours at the time the call was received. Accordingly, he called the doctor's office, used the answering service provided, and contacted the doctor who was on call. The doctor on call indicated that he had not written the prescription and that it was unlikely that anyone else in the office had written it that day. Hawk then called the Cuyahoga Falls Police Department to report the suspicious prescription. Officers came to the store when Hawk informed them that a man was attempting to fill the prescription. Shortly thereafter, officers arrived and began to question Appellant. Meanwhile, Hawk was able to contact the other doctor whose name appeared on the prescription. The doctor then spoke to Officer Travis Goodman, indicating that he had not written the prescription.
 {¶ 15} Officer Edward Caswell testified that Appellant indicated that he was picking up the prescription for a friend he had just met. Appellant did not have a last name, an address, or a phone number for this friend. Eventually, Appellant supplied Officer Caswell with the name Johanna Santamaria. Officer Caswell was unable to locate anyone with that name.
 {¶ 16} Officer Akos Cserhati also testified for the State. Officer Cserhati testified that Appellant stated that he was picking the prescription up for a friend he had just met, but that he only knew her by first name, Johanna. At the time Officer Cserhati questioned Appellant, Appellant was in possession of the prescription and handed it to the officer. The prescription was in fact written to a Rebecca Carns. No evidence was submitted that Appellant knew anyone by the name of Rebecca Carns.
 {¶ 17} This Court has stated that "[a] conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable, theory of innocence." State v.Cremeans, 9th Dist. No. 22009, 2005-Ohio-261, at ¶ 7. Further, Appellant's conviction was not against the manifest weight simply because the jury chose to believe the prosecution testimony. SeeState v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the jury [was] free to believe all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33.
 {¶ 18} In the instant matter, we find no error in the jury's decision that Appellant's account of events was implausible. Appellant allegedly agreed to pick up a prescription for a woman he had just met and only knew by her first name. The prescription, however, was not even written out to a person with the name (Johanna) Appellant gave to the officers. It was written out to a Rebecca Carns, whom Appellant never claimed to know. Further, Officer Caswell was unsuccessful in his attempt to locate anyone with the name (Johanna Santamaria) provided by Appellant. Additionally, the State produced evidence that Appellant had in his car at the time of his arrest a map of all the 24-hour pharmacies in the area: thus supporting the inference that he knowingly committed deception to obtain a dangerous drug.
 {¶ 19} We find the facts herein analogous to those presented in State v. Hatfield (May 12, 1982), 1st Dist. No. C-810544. InHatfield, the court found that the State had produced sufficient evidence to support a conviction under R.C. 2925.22. Specifically, the Court noted as follows:
"The trial court correctly identified two deceptions practiced by appellant. The first was when he asked for the prescription for Mary Connors by name and gave an address for her; appellant later admitted that he did not know anyone by that name. In our opinion this correct finding of deception is based on direct evidence." Id. at *1.
Herein, Appellant could only identify the individual for whom he was allegedly picking up the prescription for by first name. The name given by Appellant did not lead to the identification of anyone despite investigation by the officers. Further, as noted above, the name provided by Appellant did not match the name on the prescription that was found in Appellant's possession. LikeHatfield, at no point in the proceedings below was evidence submitted that Appellant knew Rebecca Carns, the alleged holder of the prescription. Accordingly, we cannot say that the jury lost its way in convicting Appellant.
 {¶ 20} Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. Roberts, supra, at *2. Appellant's first and second assignments of error are overruled.
 III. {¶ 21} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J., Carr, J., concur.
[1] It is undisputed that Xanax is a Schedule IV controlled substance. R.C. 3719.41, Schedule IV(B)(1).